William A. Delgado (SBN 222666)
wdelgado@dtolaw.com
DTO LAW
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802

Richard Z. Lee (SBN 338126)
rlee@dtolaw.com
DTO LAW
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105

Attorneys for Defendant
Morning Law Group, P.C.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL C. WINE,

Plaintiff,

v.

MORNING LAW GROUP, P.C.,

Defendant.

Case No. 2:26-CV-02243-TLN-CSK
Hon. Troy L. Nunley
U.S. Magistrate Chi Soo Kim

**DEFENDANT MORNING LAW GROUP, P.C.'S NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

*Filed concurrently with Request for Judicial Notice, Declaration of William A. Delgado, and Proposed Order*

Date: October 15, 2026
Time: 2:00 p.m.
Place.: Courtroom 2

Action Filed: June 24, 2026

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 15, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-captioned Court, located at 501 I Street, Suite 4-200, Sacramento, California 95814, before the Honorable Troy L. Nunley, Defendant Morning Law Group, P.C. ("MLG") will and hereby does move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendant moves for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

The Motion is made on the grounds that the Complaint fails to state any claim against MLG because the alleged enrollment, contract, representations, payments, and attorney-client relationship predate MLG's existence; the Complaint pleads no basis for attributing any predecessor's conduct or liabilities to MLG; the judicially noticeable bankruptcy sale documents bar successor-liability theories; and each cause of action is otherwise deficient under the applicable pleading standards. In the alternative, the Complaint is so vague and ambiguous as to MLG's alleged conduct that MLG cannot reasonably frame a response.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of William A. Delgado, the complete record in this action, and such other matters and arguments as may come before this Court, including those raised in any reply memorandum and oral argument.

The parties met and conferred on August 24, 2026 pursuant to Section 4(A) of the Court's Civil Standing Order. During that conference, Plaintiff's counsel indicated that Plaintiff intended to amend the Complaint to address certain of MLG's concerns. As of the filing of this Motion, Plaintiff has not filed an amended complaint or dismissal, necessitating this Motion.

/ /

/ /

/ /

/ /

/ /

/ /

Dated: September 4, 2026 DTO LAW

By: */s/ William A. Delgado*
William A. Delgado

Attorneys for Defendant
MORNING LAW GROUP, P.C.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. RELEVANT FACTS ........ 1

A. The Complaint's Allegations ........ 1

B. MLG's Incorporation in August 2022 ........ 2

C. The LPG Bankruptcy and Sale to MLG ........ 3

III. ARGUMENT ........ 4

A. Legal Standard ........ 4

B. The Complaint's Foundational Narrative Is Impossible as to MLG ........ 5

1. MLG did not exist when Plaintiff alleges he enrolled ........ 6

2. The LPG bankruptcy sale is the only apparent link to MLG, and it bars Plaintiff's claims ........ 6

3. The Complaint identifies no basis for attributing earlier conduct to MLG ........ 7

C. Each Cause of Action Independently Fails ........ 8

1. The fraud and negligent misrepresentation claims fail under Rules 9(b) and 12(b)(6) (Counts V and VI) ........ 8

2. The statutory claims fail because the bankruptcy-approved framework refutes the Complaint's characterization of MLG (Counts I-III) ........ 10

(a) The Complaint pleads no facts showing MLG fits the statutory classifications ........ 10

(b) The Court-approved LSA forecloses all three statutory classifications ........ 12

3. The common-law claims fail because the Complaint pleads no contract, fiduciary duty, or malpractice claim against MLG (Counts VII–IX) ........ 13

4. The UCL claim fails because it is derivative and pleads no restitutionary relief available from MLG (Count IV) ........ 15

D. In the Alternative, the Court Should Grant MLG's Motion for a More Definite Statement Under Rule 12(e) ........ 17

IV. CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
491 F. Supp. 3d 727 (E.D. Cal. 2020) .......... 13

*Adamson v. City & Cnty. San Francisco*,
2017 WL 2902944 (N.D. Cal. July 7, 2017) .......... 7

*Alan Neuman Prods., Inc. v. Albright*,
862 F.2d 1388 (9th Cir. 1988) .......... 9

*Albrecht v. Lund*,
845 F.2d 193 (9th Cir.) .......... 10

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*,
70 Cal. Rptr. 3d 199 (Cal. Ct. App. 2007) .......... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 11

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) .......... 4

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .......... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Beluca Ventures LLC v. Aktiebolag*,
622 F. Supp. 3d 806 (N.D. Cal. 2022) .......... 6

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
553 F. Supp. 3d 793 (C.D. Cal. 2021) .......... 16

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) .......... 5

*Casault v. Fed. Nat. Mortg. Ass'n*,
915 F. Supp. 2d 1113 (C.D. Cal. 2012) .......... 10

*Cleveland v. Groceryworks.com, LLC*,
200 F. Supp. 3d 924 (N.D. Cal. 2016) .......... 16

*CMA CGM Asia Shipping Pte. Ltd. v. Transform Holdco LLC*,
2022 WL 19076806 (C.D. Cal. Dec. 14, 2022) .......... 7

*Comm. for Immigrant Rts. of Sonoma Cnty. v. Cnty. of Sonoma*,
644 F. Supp. 2d 1177 (N.D. Cal. 2009) .......... 5, 17

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 14

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) .......... 13

*Enriquez v. Countrywide Home Loans, FSB*,
814 F. Supp. 2d 1042 (D. Haw. 2011) .......... 11

*Guerrero v. Halliburton Energy Servs., Inc.*,
231 F. Supp. 3d 797 (E.D. Cal. 2017) .......... 16

*Jocer Enterprises, Inc. v. Price*,
107 Cal. Rptr. 3d 539 (Cal. Ct. App. 2010) .......... 15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 5

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 4

*Korea Supply Co. v. Lockheed Martin Corp.*,
63 P.3d 937 (Cal. 2003) .......... 16

*Lombardo v. Huysentruyt*,
110 Cal. Rptr. 2d 691 (Cal. Ct. App. 2001) .......... 14

*McClintock v. West*,
162 Cal. Rptr. 3d 61 (Cal. Ct. App. 2013) .......... 14

*Parlante v. Cazares*,
2012 WL 525690 (E.D. Cal. Feb. 16, 2012) .......... 15

*Ritchie Bros. Auctioneers (Am.) Inc. v. Suid*,
2018 WL 721663 (W.D. Wash. Feb. 6, 2018) .......... 8

*Tan v. GrubHub, Inc.*,
171 F. Supp. 3d 998 (N.D. Cal. 2016) .......... 15

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 5

*Zetz v. Bos. Sci. Corp.*,
398 F. Supp. 3d 700 (E.D. Cal. 2019) .......... 5, 9

**Statutes**


11 U.S.C. § 101(5) .......... 3, 7

11 U.S.C. § 101(37) .......... 3

11 U.S.C. § 105(a) .......... 7

15 U.S.C. § 1679a(3)(A) .......... 11

Cal. Civ. Code §§ 1788.301(a), (b) .......... 11

Cal. Civ. Code §§ 1789.12(d), (e)(5) .......... 11

Cal. Corp. Code § 200(c) .......... 6


**Other Authorities**


Fed. R. Civ. P. 9(b) .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 1, 4, 8

Fed. R. Civ. P. 12(e) .......... 1, 5, 17, 18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Daniel C. Wine's Complaint depends on a threshold premise that cannot support liability against Morning Law Group, P.C. ("MLG"). According to the Complaint, the alleged debt-resolution relationship between Plaintiff and MLG began in October 2021. Nevertheless, MLG did not even exist until August 17, 2022. If Plaintiff entered into a relationship in October 2021 with *some* entity, it wasn't with MLG, and the Complaint fails to identify that entity or a viable theory for attributing that entity's conduct or liabilities to MLG.

The only apparent connection is a bankruptcy sale in August 2023 through which MLG acquired certain assets of a firm called The Litigation Practice Group, P.C. ("LPG"). But even that connection does not save the pleading. The bankruptcy court approved the sale of LPG's assets free and clear of claims, expressly including successor-liability claims, and enjoined claims against MLG arising from LPG's pre-closing conduct.

The Complaint therefore fails at the threshold. If Plaintiff's theory depends on the LPG bankruptcy sale, the bankruptcy court's sale order bars it. If Plaintiff relies on some other connection to MLG, the Complaint does not plead one. Those threshold defects, together with the claim-specific pleading failures addressed below, require dismissal under Rule 12(b)(6). At minimum, Plaintiff should be required to provide a more definite statement under Rule 12(e).

## II. RELEVANT FACTS

### A. The Complaint's Allegations

The Complaint's chronology is unclear from the outset. It alleges that Plaintiff faced financial hardship "[i]n March 2024," but also alleges that he entered into "a contract with Defendant for legal and debt resolution services" "[i]n or around October 2021."[1] Compl. ¶¶ 1, 7;

[1] Because the Complaint's paragraph numbering restarts at paragraph 1 on page 2, citations herein to paragraphs 1 through 7 refer to the paragraphs under the Complaint's "Factual Allegations" section unless otherwise stated.

*see also* Compl. ¶ 75 ("Plaintiff and Defendant entered into an attorney-client relationship on October 8, 2021, upon Plaintiff executing a Client Retainer Agreement with Defendant . . . .").

Plaintiff alleges he enrolled after "Defendant's agent" stated during a call that Defendant would resolve his debts at a significant discount, negotiate with creditors, and improve his credit scores. Compl. ¶ 5. He further alleges Defendant represented that his monthly payments would be used to expeditiously resolve his enrolled debts. Compl. ¶ 6. Plaintiff allegedly enrolled approximately $106,737.00 in debt and agreed to pay approximately $874.67 per month. Compl. ¶¶ 8–9.

The Complaint alleges that Plaintiff made payments for approximately two years, yet Defendant failed to engage his creditors in settlement discussions, resolve any enrolled accounts, or improve his credit scores. Compl. ¶¶ 19, 21. Plaintiff also alleges that Defendant falsely represented it had settled four of his debts, although none had been settled. Compl. ¶ 18. In April 2026, Defendant "cancelled Plaintiff's account without explanation." Compl. ¶ 21. The Complaint does not identify which entity enrolled Plaintiff in October 2021, when MLG first became involved, or how the alleged 2021 enrollment relates to MLG. It also references "Exhibit A (Contract)," but no exhibit was attached to the filing. Compl. ¶¶ 7, 75. These omissions matter because MLG was not incorporated until August 2022.

### B. MLG's Incorporation in August 2022

MLG was incorporated as a California professional corporation on August 17, 2022, almost ten months after the alleged October 2021 agreement. *See* Decl. of William A. Delgado ("Delgado Decl.") ¶ 6, Ex. D. The Articles of Incorporation, filed with the California Secretary of State, identify Morning Law Group, P.C. as a professional corporation organized for the purpose of engaging in the profession of law. *See id.*

### C. The LPG Bankruptcy and Sale to MLG

The Litigation Practice Group, P.C. was a California law firm that provided consumer debt resolution services to approximately 22,000 clients. *See* Delgado Decl. ¶ 3, Ex. A at 5:26. LPG filed for Chapter 11 bankruptcy protection on March 20, 2023, in the United States Bankruptcy Court for the Central District of California. *See* Delgado Decl. ¶ 4, Ex. B, Ex. 3 at p. 73.

On July 22, 2023, the bankruptcy court entered an order finding good cause to approve the sale of LPG's assets to Morning Law Group, P.C. *See* Delgado Decl. ¶ 3, Ex. A at 1:26–2:6. The court found that the sale was "fair and reasonable, was adequately marketed, was negotiated, and proposed in good faith, [was] being made to a purchaser proceeding in good faith; and [was] an 'arms length' transaction." Delgado Decl. ¶ 3, Ex. A at 17:16–19.

On August 2, 2023, the bankruptcy court entered the operative sale order approving the sale of LPG's assets—including consumer client legal services agreements—to MLG. *See* Delgado Decl. ¶ 4, Ex. B (the "Sale Order"). Specifically, the Sale Order:

- Approved the sale "free and clear of all liens (as defined in Section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in Section 101(5) of the Bankruptcy Code and including, without limitation, successor liability claims), encumbrances or other interests, of any kind or nature whatsoever." Delgado Decl. ¶ 4, Ex. B at 7:3–7.
- Provided that "[p]urchaser and any affiliates and their respective predecessors, successors, assigns, members, partners, principals, directors, officers, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor other than as set forth in the APA." Delgado Decl. ¶ 4, Ex. B at 13:7–10.
- Required that transferred consumer contracts be "reformed to comply with applicable nonbankruptcy law." Delgado Decl. ¶ 4, Ex. B at 14:8–10.
- Approved a 90-Day Consumer Notice informing consumers that their "Original Agreement" was with LPG and providing consumers the option to opt in, opt out,

or take no action within the notice period. Delgado Decl. ¶ 4, Ex. B at 17:10–23 & Ex. 3.

- Approved a form Purchaser Legal Services Agreement ("Purchaser LSA") governing MLG's relationship with transferred clients. Delgado Decl. ¶ 4, Ex. B at 17:24–28 & Ex. 4.

On January 2, 2024, the bankruptcy court entered an order establishing February 23, 2024, as the general bar date for filing proofs of claim against the LPG estate. *See* Delgado Decl. ¶ 5, Ex. C at 1:14–16. The bar date order provided that any person or entity that failed to file a proof of claim by the applicable bar date "shall be forever barred, estopped, and enjoined from asserting such claim against the Debtor's estate." *See* Delgado Decl. ¶ 5, Ex. C at 4:5–6.

## III. <u>ARGUMENT</u>

### A. Legal Standard

**Rule 12(b)(6).** Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only when the pleaded facts allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* Although the Court accepts well-pleaded facts as true, it need not accept legal conclusions, "[t]hreadbare recitals of the elements," or allegations that are merely conclusory. *Id.*; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). Nor may the Court assume that a plaintiff can prove facts not alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Dismissal is proper where the complaint lacks a cognizable legal theory or pleads insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**Rule 9(b).** Claims sounding in fraud must also satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Ninth Circuit requires the plaintiff to plead "the who, what, when, where, and how" of the alleged

misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted), *superseded by statute on other grounds*; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The allegations must be specific enough to give the defendant notice of the particular misconduct alleged so it can defend against the charge rather than simply deny wrongdoing. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Where the defendant is an entity, the complaint generally must identify the person who made the challenged statement on the entity's behalf. *Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 713 (E.D. Cal. 2019). Rule 9(b) applies not only to fraud claims, but also to other claims grounded in the same alleged fraudulent course of conduct. *Vess*, 317 F.3d at 1103–04.

**Rule 12(e).** In the alternative, Rule 12(e) permits a party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A Rule 12(e) motion is appropriate where the complaint does not provide enough clarity for the defendant to determine what conduct is at issue or to frame a responsive pleading. *See Comm. for Immigrant Rts. of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1209 (N.D. Cal. 2009) (granting Rule 12(e) relief where the complaint was "vague and difficult to reasonably decipher" and the defendants needed "a fair opportunity to frame a responsive pleading"). Although Rule 12(e) is disfavored when the information sought can be obtained through discovery, it remains available when the pleading's ambiguity prevents the defendant from understanding the basic nature of the claims asserted against it.

### B. The Complaint's Foundational Narrative Is Impossible as to MLG.

The Complaint depends on one core premise: that "Defendant" enrolled Plaintiff in a debt-resolution program, induced that enrollment through alleged representations, collected monthly payments, and then failed to perform. That premise cannot apply to MLG. MLG did not exist when Plaintiff allegedly enrolled, the Complaint pleads no theory for attributing another entity's conduct to MLG, and the only apparent connection—the LPG bankruptcy sale—bars the claims Plaintiff asserts here. This threshold defect defeats the factual basis for every cause of action.

1. *MLG did not exist when Plaintiff alleges he enrolled.*

The Complaint alleges Plaintiff enrolled in Defendant's debt settlement program "[i]n or around October 2021" by entering into a contract for legal and debt resolution services. Compl. ¶ 7. Morning Law Group, P.C., however, was not incorporated until ***August 17, 2022***. Delgado Decl. ¶ 6, Ex. D. Thus, MLG did not exist when Plaintiff allegedly enrolled. *See* Cal. Corp. Code § 200(c) (West) (noting "corporate existence begins upon the filing of the articles" of incorporation).

The timing defect is dispositive of the Complaint's foundational narrative. An entity that had not yet come into existence could not have made the alleged pre-enrollment representations, entered into the alleged contract, or collected Plaintiff's monthly payments. *See, e.g.*, *Beluca Ventures LLC v. Aktiebolag,* 622 F. Supp. 3d 806, 817 (N.D. Cal. 2022) ("[I]t is not plausible that an entity not in existence at the time of an alleged contract could be directly liable for contract and quasi-contract claims."). Yet the Complaint attributes all of that conduct to "Defendant." Compl. ¶¶ 5–7, 10, 14.

Those allegations cannot plausibly refer to MLG. At most, they describe conduct by another entity before MLG was incorporated, but the Complaint neither identifies that entity nor pleads any basis for connecting its conduct to MLG.

2. *The LPG bankruptcy sale is the only apparent link to MLG, and it bars Plaintiff's claims.*

Although the Complaint does not explain how Plaintiff came to have any relationship with MLG, the judicially noticeable record identifies only one apparent connection: LPG's bankruptcy sale. *See supra* Section II.C. That connection does not support Plaintiff's claims. The Sale Order approved MLG's purchase free and clear of claims, expressly including successor-liability claims, and limited MLG's obligations to those set forth in the APA.

The Sale Order did not transfer LPG's liabilities to MLG. It approved the transfer "free and clear" of all claims, expressly including "successor liability claims," and provided that the transferred assets would vest in MLG free of "claims . . . , encumbrances or other interests, of any kind or nature whatsoever." Delgado Decl. ¶ 4, Ex. B at 7:3–7.

The Sale Order also provides that MLG "shall have no obligations with respect to any liabilities of the Debtor other than as set forth in the APA." Delgado Decl. ¶ 4, Ex. B at 13:9–10. It further enjoins claims against MLG arising from LPG's pre-closing conduct:

> Pursuant to 11 U.S.C. § 105(a) and other applicable authorities, the Court hereby enjoins any and all claims (as defined in Section 101(5) of the Bankruptcy Code and including, without limitation, successor liability claims) against Purchaser arising from: (A) any and all actions or omissions of the Debtor, the Trustee, the Estate, or anyone acting or purporting to act for them, or any affiliates thereof prior to the Closing Date; and (B) any and all actions omissions or any other party relating to the Assumed Contracts arising prior to the Closing Date.

Delgado Decl. ¶ 4, Ex. B at 19:14-19.

Thus, Plaintiff's remedy, if any, was through the LPG bankruptcy claims process. The Bankruptcy Court established February 23, 2024, at 4:00 p.m. Pacific Time, as the general bar date for claims against LPG arising before the petition date. Delgado Decl. ¶ 5, Ex. C at 1:14-16. The Bar Date Order provides that any person who failed to file the required claim form by the applicable bar date "shall be forever barred, estopped, and enjoined from asserting such claim against the Debtor's estate." Delgado Decl. ¶ 5, Ex. C at 4:5-6. That deadline has long passed.

3. *The Complaint identifies no basis for attributing earlier conduct to MLG.*

If Plaintiff relies on some connection to MLG other than the LPG bankruptcy sale, the Complaint does not identify it. The Complaint alleges only an October 2021 attorney-client relationship with "Defendant," Compl. ¶ 75, but it does not explain how that relationship could have involved MLG before MLG existed. Nor does it allege successor liability, agency, alter ego, ratification, assignment of liability, or any other theory that would make MLG responsible for conduct of another entity before MLG existed.

That pleading gap is independently fatal. Plaintiff must allege either that MLG itself committed the challenged conduct or that a recognized legal theory permits another entity's conduct to be attributed to MLG. *See Adamson v. City & Cnty. San Francisco*, 2017 WL 2902944, at *6 (N.D. Cal. July 7, 2017) (granting motion to dismiss where plaintiff had not alleged his claims or theories of liability with sufficient clarity); *cf. CMA CGM Asia Shipping Pte. Ltd. v. Transform Holdco LLC*, 2022 WL 19076806, at *5 (C.D. Cal. Dec. 14, 2022) ("Plaintiff

may not rely on [] entirely unalleged theories of liability to defeat a Motion for Judgement on the pleadings."). The Complaint does neither. It never mentions LPG or alleges that Plaintiff's supposed relationship with MLG arose from the LPG bankruptcy sale—the only apparent connection reflected in the judicially noticeable record. In any event, the Sale Order would bar that theory. The Complaint therefore pleads no factual or legal basis to connect MLG to Plaintiff's enrollment, payments, or cancellation.

**C. Each Cause of Action Independently Fails.**

1. *The fraud and negligent misrepresentation claims fail under Rules 9(b) and 12(b)(6) (Counts V and VI).*

Counts V and VI fail because the Complaint does not plead any actionable misrepresentation attributable to MLG. The alleged statements either predate MLG's existence, lack Rule 9(b) particularity, or depend on an unpleaded and barred successor-liability theory. Each defect independently requires dismissal.

*First*, most of the alleged misrepresentations predate MLG's existence. The fraud claim identifies three alleged misstatements by Defendant: that "(1) it would expeditiously resolve his debts; (2) improve his credit scores; and (3) it resolved four (4) of Plaintiff['s] debts when in reality it did not settle any of Plaintiff's debts." Compl. ¶ 62. The negligent misrepresentation claim adds that Defendant promised to "(1) promptly communicate with Plaintiff's enrolled creditors, (2) efficiently settle Plaintiff's enrolled debts, and (3) improve Plaintiff's credit score," and represented that its services would improve Plaintiff's credit scores despite knowing missed payments would lower them. Compl. ¶¶ 69–70.

The enrollment-related statements all trace to the same source: promises allegedly made "[d]uring a call with Defendant's agent" when Plaintiff enrolled "[i]n or around October 2021," before he "formally enrolled various debts into Defendant's debt settlement program." Compl. ¶¶ 5, 7. But MLG did not exist then. Its Articles of Incorporation were filed with the California Secretary of State on August 17, 2022—nearly a year later. *See supra* Section II.B. As a general matter, a corporation that has not yet been formed cannot make representations, fraudulent or otherwise. *Cf. Ritchie Bros. Auctioneers (Am.) Inc. v. Suid*, 2018 WL 721663, at *6 (W.D. Wash.

Feb. 6, 2018) (reasoning that, before its existence, a corporation could not take the legally operative acts necessary to create rights or obligations). The Complaint's chronology therefore defeats both claims against MLG.

The only alleged representation not expressly tied to enrollment is that Defendant later claimed it had "resolved four (4) of Plaintiff['s] debts when in reality it did not settle any." Compl. ¶ 62; *see also* Compl. ¶ 18. But the Complaint alleges only that this occurred "at one point." Compl. ¶ 18. It does not allege when the statement was made, that it postdated MLG's formation, or that the speaker acted for MLG. Nor does the allegation that Defendant "knew" its program would reduce credit scores identify any specific statement or communication by MLG. Compl. ¶¶ 63, 70.

*Second*, the alleged representations also fail Rule 9(b) because the Complaint does not plead them with enough detail to connect them to MLG. The pre-enrollment promises underlying both counts—expeditious debt resolution, credit improvement, creditor communications, and debt settlement—are attributed only to "Defendant's agent." Compl. ¶ 5. The Complaint does not name the speaker, give a specific date, identify the medium, or explain which entity the speaker represented. The alleged "four debts settled" statement is even less specific: The Complaint alleges only that it occurred "at one point," with no date, speaker, medium, or facts showing the speaker acted for MLG rather than a predecessor. Compl. ¶¶ 18, 62. These gaps are fatal because the challenged statement must be attributable to the defendant being sued—here, MLG. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (fraud allegations must identify the time, place, specific content, and "identities of the parties to the misrepresentation") (citation omitted). Because the negligent misrepresentation claim rests on the same alleged statements and course of conduct, it fails for the same reason. Compl. ¶¶ 69–70; *see also Zetz*, 398 F. Supp. 3d at 713.

*Third,* Plaintiff alleges no statement by MLG after the bankruptcy court-approved sale. The Complaint does not identify any fraudulent or negligent statement MLG made after acquiring certain LPG assets through the 2023 bankruptcy sale, and the Sale Order bars any attempt to impose liability on MLG based on LPG's pre-closing statements. *See supra* Section III.B.2.

Without a specific post-acquisition statement attributable to MLG, neither claim has a factual predicate against MLG.

*Fourth*, dismissal with prejudice is warranted at least as to any claim based on enrollment-related statements allegedly made in October 2021. The Complaint alleges that Plaintiff relied on those statements when he enrolled, and judicially noticeable records show MLG was not incorporated until August 17, 2022. Compl. ¶¶ 5–7. Because a nonexistent corporation cannot commit fraud or make negligent misrepresentations, amendment cannot cure claims based on statements allegedly made 10 months before MLG even existed. To the extent Plaintiff instead relies on the separate allegation that Defendant later claimed to have resolved four debts, leave to amend should be denied unless Plaintiff can allege, consistent with Rule 9(b), the specific speaker, date, medium, content, and facts showing the speaker acted on behalf of MLG. Where the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," leave to amend should be denied as futile. *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.) (citation omitted), *amended*, 856 F.2d 111 (9th Cir. 1988). Counts V and VI should therefore be dismissed with prejudice as to the October 2021 enrollment-related statements and otherwise dismissed for failure to satisfy Rule 9(b).

2. *The statutory claims fail because the bankruptcy-approved framework refutes the Complaint's characterization of MLG (Counts I-III).*

Although Plaintiff labels "Defendant" a credit repair organization, credit services organization, and debt settlement provider, Compl. ¶¶ 27, 39, 49, those labels are unsupported by MLG-specific facts and contradicted by the judicially noticeable record.

(a) <u>The Complaint pleads no facts showing MLG fits the statutory classifications.</u>

Counts I through III fail for the threshold reasons discussed above: the Complaint alleges no conduct by MLG itself and no viable basis to attribute another entity's conduct to MLG. *See supra* Sections III.B.1–3. That defect is dispositive because each statutory claim requires well-pleaded, nonconclusory facts showing that MLG itself falls within the relevant statutory definition. *Casault v. Fed. Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1127 (C.D. Cal. 2012) (citing

*Iqbal*, 556 U.S. at 680). The Complaint instead recites statutory labels, alleging that "Defendant" is a credit repair organization, credit services organization, and debt settlement provider. Compl. ¶¶ 27, 39, 49. Those "labels and conclusions" are insufficient. *Iqbal*, 556 U.S. at 678 (citation omitted); *see also, e.g.*, *Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1063 (D. Haw. 2011) (dismissing CROA claim where plaintiff did not allege credit-repair interactions with defendants).

The statutory definitions further highlight the missing facts. The Credit Repair Organizations Act ("CROA") defines a "credit repair organization" as a person who provides services "for the express or implied purpose" of "improving any consumer's credit record, credit history, or credit rating" or "providing advice or assistance to any consumer with regard to" the same. 15 U.S.C. § 1679a(3)(A). The California Credit Services Organizations Act ("CCSOA") defines a "credit services organization" as one who sells, provides, performs, or represents that it can provide services to improve a consumer's credit, obtain credit-related assistance, or provide advice or assistance regarding the same, but excludes attorneys acting within the scope of the practice of law. Cal. Civ. Code §§ 1789.12(d), (e)(5). The California Fair Debt Settlement Practices Act ("CFDSPA") defines a "debt settlement provider" as a person who, for compensation, negotiates or offers to negotiate with creditors to reduce or settle consumer debt. Cal. Civ. Code §§ 1788.301(a), (b).

The allegations supporting those claims do not cure the deficiency. With respect to the CROA, Plaintiff alleges advance-fee and disclosure violations, Compl. ¶¶ 31, 33, 35, but pleads no facts showing that MLG agreed to provide, charged for, or owed disclosures concerning credit-repair services. As to the CCSOA, Plaintiff alleges that Defendant charged advance fees, Compl. ¶¶ 41–42, but identifies no non-legal credit-services conduct by MLG. And as to the CFDSPA, Plaintiff alleges that "Defendant" mishandled program funds, failed to pursue settlements or communicate with creditors, charged unauthorized fees, put its own interests first, and misrepresented the program's effect on Plaintiff's credit. Compl. ¶¶ 51, 53. But the Complaint does not allege that MLG itself received those funds, administered the alleged settlement program, negotiated with creditors for compensation as a debt-settlement provider, or made the alleged

credit-related representations. The Complaint therefore pleads no facts showing that MLG performed any statutory function required for these claims. *See generally* Compl. ¶¶ 1-18, 25-54.

(b) <u>The Court-approved LSA forecloses all three statutory classifications.</u>

If Plaintiff relies on the LPG bankruptcy sale to connect him to MLG—a theory the Complaint does not plead—the court-approved Purchaser Legal Services Agreement ("Purchaser LSA") refutes the statutory classifications. It states that "Morning Law Group, P.C., a licensed law corporation and its employed and affiliated attorneys (collectively referred to in this agreement as 'MLG') will provide legal services wherein it will represent you . . . ." Delgado Decl. ¶ 4, Ex. B at 17:24–28 & Ex. 4.

The Purchaser LSA also excludes credit-related services. MLG's services do not include "modification, collection, or improvement of Your credit reports or credit score, or credit repair services." *See* Delgado Decl. ¶ 4, Ex. B, Ex. 4 at pp. 79-80. And the LSA specifically states that MLG "is not a credit repair organization, is not engaged in credit repair, and will not be undertaking any work as to Your credit repair." *Id.* at p. 80. Those provisions defeat the CROA and CCSOA labels to the extent Plaintiff's theory turns on the bankruptcy sale.

The same is true for debt settlement. The Purchaser LSA states: "MLG is providing You with legal services, not debt settlement services, and the fees paid under this Agreement are for the services of MLG's attorneys." *See* Delgado Decl. ¶ 4, Ex. B, Ex. 4 at p. 80. It distinguishes debt settlement from legal services, explains that MLG represents clients in disputes and lawsuits, and states that fees are paid for legal services rather than escrowed for settlements. *See id.* That language defeats any characterization of MLG as a debt settlement provider.

The Purchaser LSA instead defines MLG's work as legal representation "in connection with disputes" over debts the client believes are invalid, inaccurate, or otherwise legally unsupported. *See* Delgado Decl. ¶ 4, Ex. B, Ex. 4 at p. 77. MLG's listed services include communicating with creditors, disputing debt validity, defending collection lawsuits, and pursuing consumer-protection claims. *See id.* Although the Complaint does not allege that Plaintiff opted

into, signed, or otherwise became subject to the Purchaser LSA, the sale documents undermine Counts I through III to the extent Plaintiff relies on the bankruptcy sale to connect him to MLG.

3. *The common-law claims fail because the Complaint pleads no contract, fiduciary duty, or malpractice claim against MLG (Counts VII–IX).*

Plaintiff's common-law claims fail for the same threshold reasons discussed above, and for additional claim-specific reasons. The Complaint does not plead the MLG-specific facts required to support breach of contract, breach of fiduciary duty, or legal malpractice. *See supra* Sections III.B.1–3. It alleges no enforceable MLG agreement that MLG breached, no funds MLG held in a fiduciary capacity, and no negligent act or omission by MLG that caused Plaintiff injury. Those omissions require dismissal of the common-law claims.

*First*, the breach-of-contract claim fails because the Complaint does not allege an enforceable contract with MLG. To plead breach of contract under California law, a plaintiff must allege the existence of a contract, plaintiff's performance, defendant's breach, and resulting damages. *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F. Supp. 3d 727, 735 (E.D. Cal. 2020). "At a minimum, the complaint must identify the specific provision of the contract allegedly breached by the defendant." *Id.* (cleaned up) (quoting *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012)). Here, the Complaint alleges that Plaintiff entered into a contract for legal and debt-resolution services "[i]n or around October 2021." Compl. ¶ 7. But MLG did not exist then. *See supra* Section III.B.1. Although the bankruptcy sale documents include a form Purchaser LSA for any post-sale MLG engagement, the Complaint does not allege that Plaintiff opted into, signed, or became bound by that agreement. It also does not identify any Purchaser LSA term MLG breached or any damages caused by such a breach. Without an MLG contract, a breached term, and resulting damages, the contract claim fails as pleaded. *See, e.g.*, *A.B. Concrete Coating*, 491 F. Supp. 3d at 735–36 (dismissing breach of contract claim where plaintiff did not allege when the contract was formed or the performance required of each party, making the allegations too vague to plead an enforceable contract).

*Second*, the breach-of-fiduciary-duty claim fails because the Complaint does not allege a fiduciary relationship with MLG. A fiduciary duty arises only when a person "'knowingly

undertake[s] to act on behalf and for the benefit of another'" or enters a relationship imposing that duty as a matter of law. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1125 (S.D. Cal. 2023) (citation omitted). The Complaint alleges neither as to MLG. Plaintiff alleges that he enrolled in a debt-resolution program, made monthly payments of approximately $874.67, and entrusted "Defendant" with money to settle his debts. Compl. ¶¶ 7–10, 89–91. But the Complaint uses "Defendant" generically and does not allege that MLG received, held, controlled, or disbursed Plaintiff's funds, or that any pre-sale payments were later transferred to, or held by, MLG in a fiduciary capacity. Those omissions defeat the fiduciary-duty claim. *See, e.g.*, *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199, 215 (Cal. Ct. App. 2007) (control over another's property is the "key factor" in a fiduciary relationship) (citation omitted).

The post-sale documents do not cure that defect. The form Purchaser LSA for any post-sale MLG engagement states that fees paid to MLG are for legal services, are earned when paid, and are not escrowed for debt settlements. *See* Delgado Decl. ¶ 4, Ex. B, Ex. 4 at p. 79. The Complaint does not allege that Plaintiff opted into, signed, or became bound by that agreement, or identify any term showing that MLG held Plaintiff's payments in trust or otherwise assumed fiduciary obligations over funds intended for debt resolution.

*Third*, the malpractice claim fails because the Complaint does not plead an attorney-client relationship with MLG. A legal-malpractice claim requires "(1) the attorney-client relationship or other basis for duty; (2) a negligent act or omission; (3) causation; and (4) damages." *Lombardo v. Huysentruyt*, 110 Cal. Rptr. 2d 691, 699 (Cal. Ct. App. 2001). The Complaint alleges that Plaintiff entered into an attorney-client relationship with "Defendant" on October 8, 2021, when he executed a Client Retainer Agreement. Compl. ¶ 75. But MLG did not exist then. *See supra* Section III.B.1. And although the bankruptcy sale documents include a form Purchaser LSA for any later MLG engagement, the Complaint does not allege that Plaintiff opted into, signed, or became bound by that agreement. It also identifies no MLG attorney who represented Plaintiff and no post-sale legal services MLG undertook for him. Without facts showing an attorney-client relationship with MLG, the malpractice claim fails as pleaded. *See, e.g.*, *McClintock v. West*, 162 Cal. Rptr. 3d 61, 73 (Cal. Ct. App. 2013) (dismissing legal malpractice claim where there was no

"factual indicia of an attorney-client relationship," including "no agreement for representation between [the parties]").

The malpractice claim also fails for lack of breach and causation. Even if Plaintiff later formed an attorney-client relationship with MLG, the Complaint does not identify any negligent act or omission by MLG, any duty MLG breached, or any injury MLG caused. Nor does it allege facts showing that, "'but for the alleged malpractice'" by MLG, Plaintiff likely "'would have obtained a more favorable result.'" *Parlante v. Cazares*, 2012 WL 525690, at *4 (E.D. Cal. Feb. 16, 2012) (quoting *Jocer Enterprises, Inc. v. Price*, 107 Cal. Rptr. 3d 539, 550 (Cal. Ct. App. 2010)). The Complaint's generalized allegations that "Defendant" failed to communicate with creditors, resolve debts, or improve Plaintiff's credit score do not plead malpractice against MLG. Compl. ¶¶ 17–19, 75–80. The Complaint does not allege what would have changed absent MLG's alleged conduct, identify any debt MLG should have resolved, point to any lawsuit MLG should have avoided or won, or plead any concrete loss caused by MLG. Those omissions independently defeat the malpractice claim.

4. *The UCL claim fails because it is derivative and pleads no restitutionary relief available from MLG (Count IV).*

The UCL claim fails for similar reasons. Plaintiff alleges no actionable unlawful, unfair, or fraudulent conduct by MLG, and identifies no equitable relief available from MLG. *See supra* Sections III.B.1–3, III.C.1–3. Count IV therefore fails for three independent reasons.

*First*, the UCL claim fails under the unlawful prong because it is derivative. Count IV relies on the same credit-repair and debt-settlement statutes and theories asserted elsewhere, and the Complaint does not allege any separate unlawful conduct by MLG. Compl. ¶¶ 55–58. "Where the UCL claim is premised on the same acts alleged in the complaint's other causes of action, and those causes of action fail, the UCL claim likewise must be dismissed because the plaintiff has not adequately alleged any predicate unlawful acts." *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1010–11 (N.D. Cal. 2016). Because the predicate statutory and common-law theories fail for the reasons explained above, Plaintiff cannot use the UCL's unlawful prong to revive them. Nor does

the Complaint identify any post-sale MLG conduct that would support an independent unlawful-prong claim apart from the barred or inadequately pleaded conduct attributed to a predecessor.

*Second*, the Complaint pleads no restitutionary remedy against MLG. Plaintiff seeks actual and punitive damages, Compl. ¶¶ 59(b), (c), but private UCL relief is limited to injunctions and restitution. *Guerrero v. Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 807 (E.D. Cal. 2017). Restitution reaches only money or property in which the plaintiff has an "'ownership interest'" and that the defendant acquired through the challenged conduct. *Id.* (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 947 (Cal. 2003)). The Complaint does not allege that MLG received any such money or property. It alleges monthly payments beginning with the October 2021 enrollment but does not distinguish payments made before MLG existed from any post-sale payments MLG supposedly received. Nor does it allege that Plaintiff opted into the Purchaser LSA, made post-sale payments to MLG, or paid MLG anything other than legal-service fees under the court-approved sale documents. Without facts tying recoverable money or property to MLG, Plaintiff has no UCL remedy against MLG.

*Third*, the Complaint pleads no standalone unfair-prong claim against MLG. A UCL unfairness claim must be tied to the defendant's own conduct and supported by facts showing more than dissatisfaction with the underlying transaction. A business practice is unfair only if it is "contrary to established public policy" or is "immoral, unethical, oppressive or unscrupulous" and harms consumers in a way that outweighs its benefits. *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 960 (N.D. Cal. 2016). The Complaint does not meet that standard. Its unfairness allegations rely on the same debt-settlement program, credit representations, and alleged nonperformance discussed above. Compl. ¶¶ 57–58. It identifies no post-acquisition MLG conduct that independently satisfies the unfairness prong, and no facts showing that MLG engaged in any unfair practice separate from conduct attributed to a predecessor. Count IV therefore fails. *See, e.g.*, *BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 802 (C.D. Cal. 2021) (dismissing UCL unfair-prong claim where plaintiff alleged only conclusory labels and insufficient facts showing the defendant made the challenged statements or engaged in unfair conduct).

### D. In the Alternative, the Court Should Grant MLG's Motion for a More Definite Statement Under Rule 12(e).

If any claim survives dismissal, Rule 12(e) relief is warranted. The Complaint does not identify the entity that allegedly contracted with Plaintiff in October 2021, explain how that entity's conduct could be attributed to MLG, or allege when MLG supposedly became involved. As a result, MLG cannot reasonably determine what conduct it must answer. *See Comm. for Immigrant Rts.*, 644 F. Supp. 2d at 1209 (ordering a more definite statement where the complaint was "vague and difficult to reasonably decipher" and the defendant needed "a fair opportunity to frame a responsive pleading").

If the Court does not dismiss the Complaint, MLG requests an order requiring Plaintiff to file a more definite statement identifying:

1. Which entity Plaintiff contracted with in October 2021.
2. What legal theory (successor liability, agency, alter ego, or other) connects that entity's conduct to MLG.
3. When Plaintiff's relationship with MLG specifically began.
4. Which contract governs the relationship with MLG and its specific terms.
5. For each alleged misrepresentation: who made the statement, when, through what medium, and on behalf of which entity.
6. Which payments were made to MLG versus any prior entity, and under which agreement.
7. Which specific post-sale MLG conduct is alleged to violate each statute.

Without those details, MLG cannot determine whether Plaintiff's claims are directed at MLG, LPG, another predecessor entity, or some combination of entities. A more definite statement is therefore necessary if any claim survives dismissal.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, MLG respectfully requests that the Court dismiss the Complaint in its entirety. In the alternative, MLG requests that the Court dismiss Counts V and VI, with prejudice as to the October 2021 enrollment-related statements, for failure to satisfy Rule 9(b), and dismiss the remaining counts without prejudice to the filing of an amended complaint that pleads

MLG-specific conduct and a cognizable legal theory for attributing pre-incorporation conduct to MLG. In the further alternative, MLG requests that the Court order Plaintiff to file a more definite statement under Rule 12(e) addressing the deficiencies identified above.

Dated: September 4, 2026 DTO LAW

By: */s/ William A. Delgado*
William A. Delgado

Attorneys for Defendant
MORNING LAW GROUP, P.C.