**SULAIMAN LAW GROUP**
Alexander J. Taylor
2500 South Highland Ave
Suite 200
Lombard, Illinois 60148
Telephone: 331-307-7646
Facsimile: 630-575-8188
Email: ataylor@sulaimanlaw.com
*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL C. WINE,<br><br>Plaintiff,<br><br>v.<br><br>MORNING LAW GROUP, P.C.,<br><br>Defendant. | Case No. 2:26-cv-02243-TLN-CSK<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.;**<br><br>**2. VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATION ACT, CAL. CIV. CODE § 1789.10;**<br><br>**3. VIOLATIONS OF THE CALIFORNIA FAIR DEBT SETTLEMENT PRACTICE ACT, CAL. CIV. CODE § 1788.300;**<br><br>**4. VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200.**<br><br>**DEMAND FOR JURY TRIAL** |

**FIRST AMENDED COMPLAINT**

**NOW COMES** DANIEL C. WINE ("Plaintiff"), by and through his undersigned counsel, complaining of MORNING LAW GROUP, P.C., ("Defendant"), as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action seeking redress for violations of the Credit Repair Organizations Act ("CROA"), pursuant to 15 U.S.C. §1679, the California Credit Services Organization Act ("CCSOA"), pursuant to Cal. Civ. Code § 1789.10, the California Fair Debt

Settlement Practice Act (CFDSPA"), pursuant to Cal. Civ. Code § 1788.300, the California Unfair Competition Law ("CUCL"), pursuant to Cal. Bus. & Prof. Code § 17200, fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty, and legal malpractice.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in the Central District of California and a substantial portion of the events or omissions giving rise to the claims occurred within the Central District of California.

## PARTIES

5. Plaintiff is a natural person and consumer, over 18 years of age, residing in Sacramento, California.

6. Defendant MORNING LAW GROUP, P.C. is a California law firm that specializes in consumer debt settlement.

7. Defendant maintains its principal of business in Irvine, California.

## FACTUAL ALLEGATIONS

8. In or around October 2021, Plaintiff was facing financial hardship.

9. Due to this financial hardship, Plaintiff was unable to keep up with his mounting debt.

10. Accordingly, Plaintiff began looking for debt relief companies that could assist him in resolving his debt and improving his credit.

11. Plaintiff found Defendant's predecessor in interest, The Litigation Practice Group, P.C. ("LPG").

12. Plaintiff entered into a contractual relationship with LPG in October 2021 and remained in LPG's debt resolution program until approximately October 2022.

13. In October 2022, Plaintiff's debt resolution program was unilaterally transferred and/or assigned to Phoenix Law Group ("PLG").

14. Upon information and belief, PLG and LPG were related entities.

15. Plaintiff remained in PLG's debt resolution program from approximately October 2022 until March 2024.

16. At some point in time, to reasons unbeknownst to Plaintiff, his debt resolution program was transferred and/or assigned from PLG to Defendant.

17. In March 2024, Plaintiff contacted Defendant to inquire about the services that it would be rendering on his behalf.

18. During a call with Defendant's agent in March 2024, the agent represented to Plaintiff that it would be able to: (1) challenge invalid or illegal debts present on Plaintiff's credit report ("disputed debts"); (2) represent Plaintiff if a creditor or collection agency were to sue; and (3) pursue a claim on behalf of the Plaintiff against a creditor or collection agency.

19. During this call, Defendant's agent represented to Plaintiff that its services would **increase and/or improve** Plaintiff's credit score.

20. Defendant further represented to Plaintiff that all he would need to do is make monthly payments over a certain period of time and that Defendant would utilize the payments to expeditiously resolve Plaintiff's debts and improve his credit score.

21. On March 21, 2024, having relied on Defendant's representations, Plaintiff formally enrolled various debts into Defendant's program by entering into a contract with Defendant for

legal and debt resolution services, in which Defendant would work with Plaintiff's creditors to remove disputed debts from Plaintiff's credit report, and improve Plaintiff's credit score.

22. Specifically, Plaintiff enrolled a total debt amount of approximately $106,737.00 across six (6) accounts.

23. Pursuant to the contract, Plaintiff was obligated to make monthly payments of approximately $874.67.

24. Plaintiff proceeded to make his monthly payments to Defendant in a timely manner.

25. During the enrollment period, Plaintiff was repeatedly assured that Defendant would actively assist Plaintiff in communicating with creditors and/or any related debt collectors regarding disputed debts; research, assess, and present legal challenges as appropriate regarding disputed debts; and represent Plaintiff in actions regarding disputed debts, wherein an additional fee may be incurred for legal actions originating prior to Plaintiff's enrollment with Defendant.

26. Defendant instructed Plaintiff to not pay his creditors as it would be in active communications with Plaintiff's creditors in an effort to resolve Plaintiff's debts and improve Plaintiff's credit scores.

27. Despite Defendant's assurances, Defendant failed to resolve Plaintiff's debts as expeditiously as Defendant represented it would.

28. Despite Defendant's representations, Plaintiff's credit scores did not improve.

29. Plaintiff signed up for Defendant's legal and debt resolution services based on its false representations that it would promptly challenge invalid or illegal debts on his credit report, settle his outstanding debts, and improve his credit.

30. Throughout its dealings with Plaintiff, Defendant deceptively and misleadingly strung Plaintiff along, telling him what he wanted to hear in order for him to keep making payments,

only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's legal and debt resolution services.

31. Furthermore, Defendant repeatedly and falsely represented to Plaintiff that it was working on challenging invalid or illegal debts on his credit report on Plaintiff's behalf.

32. However, Defendant chronically failed to engage Plaintiff's creditors in discussions, which resulted in Plaintiff's creditors hounding Plaintiff for payments.

33. Plaintiff would call Defendant for updates on the disputed debts and Defendant would tell him more time was needed and to request updates several months later.

34. Upon information and belief, Defendant only sent Plaintiff's creditors an initial letter indicating it was representing Plaintiff in legal and debt resolution matters.

35. Notably, at one point, Defendant falsely represented to Plaintiff that it had settled four (4) of Plaintiff's debts when in fact Defendant did not settle a single debt that was enrolled in Defendant's program.

36. Despite Plaintiff paying thousands of dollars into Defendant's program, Defendant failed to meaningfully (1) remove disputed debts from Plaintiff's credit report; (2) resolve *any* of Plaintiff's debts, or (3) improve Plaintiff's credit scores.

37. After faithfully making monthly payments of approximately $874.67 over the course of two years, Plaintiff was frustrated to learn that Defendant had failed to resolve *any* of his accounts. In April 2026, Defendant cancelled Plaintiff's account without explanation.

38. Notably, it was a factual impossibility for Plaintiff to discover that Defendant's pre-enrollment representations were false until after Defendant failed to deliver on its representations (*e.g.* expeditiously remove Plaintiff's disputed debts and improve his credit).

39. Plaintiff suffered significant damages as result of Defendant's misrepresentations and omissions, including: financial losses, increased debt due to interest that accrued on the enrolled

debt, emotional distress, mental anguish, decreased credit score, credit denials, and deprivation of the money that Plaintiff paid into Defendant's program.

40. Notably, in or around July 2024, Plaintiff was unable to rent a car in Alabama due to his credit score and credit history, which Defendant's legal and debt resolution program purported to improve by removing disputed debts from Plaintiff's credit reports.

41. Simply put, Plaintiff found himself in a much worse financial position after enrolling in Defendant's legal and debt resolution program.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

42. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

43. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA because he is an individual that sought and obtained credit repair services.

44. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or **perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit**, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

45. Defendant's legal and debt resolution services, aimed at challenging invalid or illegal debts on consumers' credit reports with ultimate goal of removing such disputed debts, thereby increasing and/or improving consumers' credit scores, fall within the CROA statutory framework, thus exposing Defendant to liability under the statute.

46. Defendant received $874.67 from March 2024 through March 2026 from Plaintiff for the express purpose of challenging the disputed debts, getting such debts removed, and

ultimately improving Plaintiff's credit scores and credit history.

47. Defendant's legal and debt resolution services at the very least **imply** the purpose of its services/program to be aimed at improving a consumer's credit.

**a. Violations of CROA § 1679b(a)(3) and (a)(4)**

48. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

49. Defendant violated of §§ 1679b(a)(3) and (4) by, *inter alia*, (1) falsely representing, expressly via Defendant's agent to Plaintiff over the phone, or implicitly due to the nature of its services, that its program could improve Plaintiff's credit when it had actual knowledge that its program would destroy Plaintiff's credit (as Defendant told Plaintiff to not make payments to creditors and failed to challenge and remove disputed debts from Plaintiff's credit report); and (2) falsely representing the efficacy of its debt resolution program, including how fast it could obtain the results Plaintiff expected under the contract.

**b. Violations of CROA § 1679b(b)**

50. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

51. Defendant violated § 1679b(b) because it continuously charged Plaintiff $874.67 a month without taking any action beyond sending an initial letter to Plaintiff's creditors that it was

now representing Plaintiff. At no point did Defendant perform its contractual duties to challenge and remove disputed debts from Plaintiff's credit report.

52. In other words, Defendant's charging and receiving of money for services it agreed to perform before such services were **fully** performed are a clear violation of § 1679b(b). Sending an initial letter to Plaintiff's creditors and adopting a "wait and see" approach does not clear the bar of contractual performance.

**c. Violations of CROA § 1679c**

53. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the disclosures that must be provided to consumers as well as when and how such disclosures must be provided.

54. Defendant violated the above provision of the CROA through its failure to provide the written disclosures required by the CROA in the manner required.

**d. Violations of CROA § 1679d**

55. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

56. Defendant violated § 1692d(b)(4) of the CROA through its failure to include the disclosure required by § 1692d(b)(4) of the CROA.

57. As alleged above, Claimants were harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff DANIEL C. WINE, respectfully requests that the Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at evidentiary hearing, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at evidentiary hearing, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Court deems just and appropriate.

**COUNT II – VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATION ACT**

58. Plaintiff restates and realleges the preceding paragraphs as though fully set forth herein.

59. Plaintiff is a "buyer" as defined by Cal. Civ. Code § 1789.12(c).

60. Defendant is a "credit services organization" as defined by Cal. Civ. Code § 1789.12(a).

**a. Violation of CCSOA § 1789.13**

61. The CCSOA, pursuant to Cal. Civ. Code § 1789.13, provides a list of prohibited conduct for credit services organizations.

62. Pursuant to § 1789.13(a), credit services organization cannot "[c]harge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the consumer."

63. Defendant violated the above referenced provisions of the CCSOA through its charging and receiving of money for services it agreed to perform before such services were **fully** performed.

64. Pursuant to § 1789.13(g), credit services organization cannot "[m]ake or use untrue or misleading representations in the offer or sale of the services of a credit services organization." Similarly, pursuant to § 1789.13(h), a credit services organization cannot "[e]ngage, directly or indirectly, in an act, practice, or course of business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit service organization."

65. As outlined above, Defendant violated the above referenced provisions of the CCSOA by, *inter alia*, (1) falsely representing, expressly via Defendant's agent to Plaintiff over the phone, or implicitly due to the nature of its services, that its program could improve Plaintiff's credit when it had actual knowledge that its program would destroy Plaintiff's credit (as Defendant told Plaintiff to not make payments to creditors and failed to challenge and remove disputed debts from Plaintiff's credit report); and (2) falsely representing the efficacy of its debt resolution program, including how fast it could obtain the results Plaintiff expected under the contract.

66. Defendant's unfair conduct is against public policy because it created the false impression that Defendant was handling his financial and credit records properly while the consumer believes Defendant has his best interest.

67. Upon information and belief, Defendant systematically engages in unfair and deceptive practices as described herein in an effort to maximize profits at the expense of California consumers.

**WHEREFORE**, Plaintiff DANIEL C. WINE, respectfully requests that the Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages, pursuant to Cal. Civ. Code § 1789.21(a);

c. Awarding Plaintiff punitive damages, pursuant to Cal. Civ. Code § 1789.21(a);

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and,

e. Awarding any other relief the Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE CALIFORNIA FAIR DEBT SETTLEMENT PRACTICES ACT

68. Plaintiff restates and realleges all preceding paragraphs as though fully set forth herein.

69. Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1788.301(d).

70. Defendant is a "debt settlement provider" as defined by Cal. Civ. Code § 1788.301(a).

**a. Violations of § 1788.302(a)**

71. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(a), provides that "[a] debt settlement provider shall not engage in false, deceptive, or misleading acts or practices when providing debt settlement services." Further, "without limiting the general applicability of the foregoing," conduct violates § 1788.302(a) if it includes "[o]mitting any material information." Cal Civ. Code § 1788.302(a)(3).

72. Defendant violated § 1788.302(a) of the CFDSPA by, *inter alia*: (1) failing to challenge disputed debts; (2) failing to remove disputed debts from his credit report; (3) failing to provide legal and debt resolution services to the best of its ability; (4) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (5) putting its financial interests ahead of Plaintiff's interest by charging for services it was not performing; and (6) falsely representing to Plaintiff that its program could improve Plaintiff's credit score.

**b. Violations of § 1788.302(c)**

73. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(c), provides that "[a] debt

settlement provider . . . shall not engage in unfair, abusive, or deceptive acts or practices when providing debt settlement services . . . ."

74. Defendant violated § 1788.302(c) by, *inter alia*, (1) failing to challenge disputed debts; (2) failing to remove disputed debts from his credit report; (3) failing to provide legal and debt resolution services to the best of its ability; (4) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (5) putting its financial interests ahead of Plaintiff's interest by charging for services it was not performing; and (6) falsely representing to Plaintiff that its program could improve Plaintiff's credit score.

75. As alleged above, Plaintiff was harmed by Defendant's actions and inactions.

**WHEREFORE**, Plaintiff DANIEL C. WINE, respectfully requests that the Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages, pursuant to Cal. Civ. Code § 1788.305(b)(1)(B);

c. Awarding Plaintiff punitive damages, pursuant to Cal. Civ. Code § 1788.305(b)(1)(A), of $5,000.00 per violation of this title;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1788.305(b)(3); and,

e. Awarding any other relief the Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW

76. Plaintiff restates and realleges all preceding paragraphs as though fully set forth herein.

77. California's Unfair Competition Law ("CUCL") "broadly prohibits unlawful,

unfair, or fraudulent business practices." *Breazeale v. Victim Servs.*, 878 F. 3d. 759, 763 (9th Cir. 2017).

78. Defendant engaged in unfair, fraudulent and deceptive as to the nature of its legal and debt resolution services. Plaintiff was led to believe that Defendant's services would improve Plaintiff's credit score; however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.

79. Defendant violated the CUCL by, *inter alia*: (1) failing to challenge disputed debts; (2) failing to remove disputed debts from his credit report; (3) failing to provide legal and debt resolution services to the best of its ability; (4) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (5) putting its financial interests ahead of Plaintiff's interest by charging for services it was not performing; and (6) falsely representing to Plaintiff that its program could improve Plaintiff's credit score.

80. As set forth above, Plaintiff was severely damaged by Defendant's conduct.

**WHEREFORE**, Plaintiff DANIEL C. WINE, respectfully requests that the Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff restitutionary remedy(ies) as applicable;

c. Awarding Plaintiff's costs and reasonable attorney fees; and,

a. Awarding any other relief the Court deems just and appropriate.

## COUNT V – FRAUD

81. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

82. The elements of fraud are: (1) a factual representation or, where there is a duty to disclose, concealment of a fact; (2) which was untrue; (3) made with knowledge of its falsity or made recklessly without caring whether it was true or false; (4) made with the intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment.

83. Defendant committed fraud by falsely representing to Plaintiff that (1) it would expeditiously resolve his debts; (2) improve his credit scores; and (3) it resolved four (4) of Plaintiff debts when in reality it did not settle, challenge, or remove any of Plaintiff's debts.

84. Defendant knew that its debt resolution program cannot possibly improve Plaintiff's credit scores as it requires Plaintiff to stop making payments to his creditors, which will in turn decrease Plaintiff's credit scores.

85. Notably, Defendant explicitly told Plaintiff to not make any payments to his creditors.

86. Plaintiff detrimentally relied on the representations by enrolling in Defendant's debt resolution/credit improvement program and making payments into the program.

87. Despite making payments into Defendant's debt resolution/credit improvement program, Defendant failed to settle, challenge, or remove any of Plaintiff's debts or improve Plaintiff's credit scores.

88. As alleged above, Plaintiff was severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. A judgment in Plaintiff's favor for fraud;

b. Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial;

c. Awarding Plaintiff his reasonable attorney's fees and costs; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT VI – NEGLIGENT MISREPRESENTATION

89. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

90. The tort of negligent misrepresentation has four elements: (1) a duty of care or voluntary assumption of a duty on the part of the defendant; (2) a breach of that duty, i.e., failure to exercise ordinary care in making the representation or in ascertaining the facts; (3) a causal link between the conduct and the injury; and (4) actual loss or damage as a result of the injury.

91. Defendant made negligent misrepresentations through its conduct in promising Plaintiff that it would (1) promptly communicate with Plaintiff's enrolled creditors, (2) efficiently settle Plaintiff's enrolled debts, and (3) improve Plaintiff's credit score.

92. Further, Defendant implicitly and/or explicitly represented to Plaintiff that its services would improve Plaintiff's credit scores when it knew that Plaintiff's credit scores would decrease due to missed payments.

93. Plaintiff heavily relied on all of the aforementioned false statements to his detriment.

94. As alleged above, Plaintiff was severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

e. A judgment in Plaintiff's favor for negligent misrepresentation;

f. Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial;

g. Awarding Plaintiff's reasonable attorney's fees and costs; and

h. Awarding any other relief as this Honorable Court deems just and appropriate.

## Count VII – Legal Malpractice

95. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

96. To establish a cause of action for legal malpractice based on negligence, a plaintiff must prove the following elements: (1) an attorney-client relationship, (2) the attorney's actions were negligent; (3) the attorney's negligent actions caused the client's injury; and (4) the client suffered an actual injury..

97. Plaintiff and Defendant entered into an attorney-client relationship on March 21, 2024, upon Plaintiff executing a Client Retainer Agreement with Defendant in which Defendant agreed to provide legal representation and debt resolution services to Plaintiff.

98. Defendant owed a professional duty to Plaintiff as a result of this contractual relationship, specifically to negotiate with Plaintiff's creditors and provide other legal and debt resolution services.

99. The professional duty requires the attorney to exercise that degree of care, skill, and judgment which is usually exercised under like or similar circumstances by lawyers licensed to practice in this state.

100. Defendant breached its duties as set forth in the Client Retainer Agreement by, *inter alia*, (1) failing to promptly communicate with Plaintiff's enrolled creditors, (2) failing to resolve *any* of Plaintiff's enrolled debts, and (3) falsely representing to Plaintiff that it has resolved some of his enrolled debt.

101. As set forth above, Defendant failed to resolve any of Plaintiff's debts despite having adequate funds to resolve Plaintiff's debts.

102. As set forth above, Plaintiff suffered damages as a result of Defendant's legal malpractice.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. A judgment in favor of Plaintiff for legal malpractice;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages; and,

d. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT VIII – BREACH OF CONTRACT**

103. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

104. The contract for legal and debt resolution services between Plaintiff and Defendant is a valid and enforceable contract.

105. The elements of breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.

106. Defendant breached its contract with Plaintiff by, *inter alia*, (1) failing to challenge disputed debts; (2) failing to remove disputed debts from his credit report; (3) failing to provide legal and debt resolution services to the best of its ability; (4) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (5) putting its financial interests ahead of Plaintiff's interest by charging for services it was not performing; and (6) falsely representing to Plaintiff that its program could improve Plaintiff's credit score.

107. Additionally, every contract implies good faith and fair dealing between the parties to it.

108. There could be no question that Defendant's comprehensive conduct as set forth above breaches the implied covenant of good faith and fair dealing.

109. As set forth above, Plaintiff suffered damages as a result of Defendant's breach of contract.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. A judgment in favor of Plaintiff for legal malpractice;

b. Awarding Plaintiff compensatory damages;

c. Awarding Plaintiff punitive damages; and,

d. Awarding any other relief as the Honorable Court deems just and appropriate.

**COUNT IX – BREACH OF FIDUCIARY DUTY**

110. Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

111. Defendant owed Plaintiff a fiduciary duty arising out of the nature of this relationship.

112. Defendant owed Plaintiff a fiduciary duty because Plaintiff reposed a special confidence in Defendant and Defendant was bound to act in good faith and with due regard of Plaintiff.

113. Specifically, Plaintiff entrusted Defendant with his money and to use his money in a responsible manner to settle his debts.

114. Defendant breached its fiduciary duty to Plaintiff by, *inter alia*, (1) failing to challenge disputed debts; (2) failing to remove disputed debts from his credit report; (3) failing to provide legal and debt resolution services to the best of its ability; (4) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (5) putting its financial interests ahead of Plaintiff's interest by charging for services it was not performing; and (6) falsely representing to Plaintiff that its program could improve Plaintiff's credit score.

115. As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. A judgment in Plaintiff's favor for breach of fiduciary duty;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Awarding any other relief as the Honorable Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 17, 2026

Respectfully Submitted,

/s/ *Alexander J. Taylor*
Alexander J. Taylor, Esq.
CA Bar No. 332334
Sulaiman Law Group, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
*Counsel for Plaintiff*