William A. Delgado (SBN 222666)
wdelgado@dtolaw.com
DTO LAW
915 Wilshire Boulevard, Suite 1950
Los Angeles, California 90017
Telephone: (213) 335-6999
Facsimile: (213) 335-7802

Richard Z. Lee (SBN 338126)
rlee@dtolaw.com
DTO LAW
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105

Attorneys for Defendant
MORNING LAW GROUP, P.C.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL C. WINE,

Plaintiff,

v.

MORNING LAW GROUP, P.C.,

Defendant.

Case No. 2:26-CV-02243-TLN-CSK
Hon. Troy L. Nunley
U.S. Magistrate Judge Chi Soo Kim

**DEFENDANT MORNING LAW GROUP, P.C.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

*Filed concurrently with Request for Judicial Notice, Declaration of William A. Delgado, and Proposed Order*

Date: December 3, 2026
Time: 2:00 p.m.
Place: Courtroom 2

Action Filed: June 24, 2026

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 3, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the above-captioned Court, located at 501 I Street, Suite 4-200, Sacramento, California 95814, before the Honorable Troy L. Nunley, Defendant Morning Law Group, P.C. ("MLG") will and hereby does move to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Motion is made on the grounds that the FAC fails to plead actionable fraud or negligent misrepresentation; alleges legal services outside the scope of the Credit Repair Organizations Act, California Credit Services Organizations Act, and California Fair Debt Settlement Practices Act; fails to plead breach, causation, or damages for legal malpractice; fails to plead a contractual breach; asserts only derivative or otherwise deficient UCL theories; and alleges no distinct fiduciary breach or resulting harm.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of William A. Delgado, the complete record in this action, and such other matters and arguments as may come before this Court, including those raised in any reply memorandum and oral argument.

The parties met and conferred on September 30, 2026 pursuant to Section 4(A) of the Court's Civil Standing Order, but were not able to reach a resolution that obviated motion practice.

Dated: October 2, 2026

DTO LAW

By: */s/ William A. Delgado*
William A. Delgado

Attorneys for Defendant
MORNING LAW GROUP, P.C.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. RELEVANT FACTS ........ 1

A. Procedural History ........ 1

B. The FAC's New Allegations ........ 2

C. The LPG Bankruptcy and the Purchaser LSA ........ 2

D. Plaintiff's March 21, 2024 Legal Services Agreement ........ 3

III. ARGUMENT ........ 4

A. Legal Standard ........ 4

B. The Fraud and Negligent Misrepresentation Claims Fail Under Rules 9(b) and 12(b)(6) (Counts V and VI) ........ 5

1. The FAC does not plead the alleged misrepresentations with particularity ........ 5

2. The FAC does not plausibly plead falsity, the required state of mind, or justifiable reliance ........ 6

C. The Statutory Claims Fail Because MLG Provided Legal Services, Not Credit Repair or Debt Settlement (Counts I–III) ........ 8

1. The CROA claim fails because the FAC does not plead credit repair services (Count I) ........ 9

2. The CCSOA claim fails under the attorney exemption and because the FAC alleges no nonlegal credit services (Count II) ........ 10

3. The CFDSPA claim fails because the FAC does not plead debt settlement services (Count III) ........ 11

D. The Legal Malpractice Claim Fails for Lack of Breach, Causation, and Damages (Count VII) ........ 12

E. The Breach of Contract Claim Does Not Plead Breach of an Obligation Imposed by the Agreement (Count VIII) ........ 13

F. The UCL Claim Fails Because It Is Derivative and Pleads No Independent Unfair or Fraudulent Conduct by MLG (Count IV) ........ 14

G. The Breach of Fiduciary Duty Claim Pleads No Distinct Breach or Resulting Harm (Count IX) ........ 15

IV. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
491 F. Supp. 3d 727 (E.D. Cal. 2020) .......... 13

*Alan Neuman Prods., Inc. v. Albright*,
862 F.2d 1388 (9th Cir. 1988) .......... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 6, 7, 8

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) .......... 4

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
553 F. Supp. 3d 793 (C.D. Cal. 2021) .......... 15

*Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*,
17 Cal. 4th 119 (1998) .......... 8, 12

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) .......... 5

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990) .......... 14

*Cleveland v. Groceryworks.com, LLC*,
200 F. Supp. 3d 924 (N.D. Cal. 2016) .......... 15

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) .......... 13

*Enriquez v. Countrywide Home Loans, FSB*,
814 F. Supp. 2d 1042 (D. Haw. 2011) .......... 9

*Jocer Enters., Inc. v. Price*,
107 Cal. Rptr. 3d 539 (Cal. Ct. App. 2010) .......... 12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 5

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 4, 11

*Lazar v. Superior Court*,
12 Cal. 4th 631 (1996) .......... 6, 7

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) .......... 3

*MH Pillars Ltd. v. Realini*,
277 F. Supp. 3d 1077 (N.D. Cal. 2017) .......... 15

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .......... 6

*Parlante v. Cazares*,
2012 WL 525690 (E.D. Cal. Feb. 16, 2012) .......... 12

*Small v. Fritz Cos., Inc.*,
30 Cal. 4th 167 (2003) .......... 6, 7

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.) .......... 7, 16

*Tan v. GrubHub, Inc.*,
171 F. Supp. 3d 998 (N.D. Cal. 2016) .......... 14

*Tribeca Cos., LLC v. First Am. Title Ins. Co.*,
239 Cal. App. 4th 1088 (2015) .......... 16

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 5

*Viner v. Sweet*,
30 Cal. 4th 1232 (2003) .......... 12

*Zetz v. Bos. Sci. Corp.*,
398 F. Supp. 3d 700 (E.D. Cal. 2019) .......... 6


**Statutes**


15 U.S.C. § 1679a(3)(A) .......... 8, 9, 10, 14

15 U.S.C. § 1679b(a)(3) .......... 9

15 U.S.C. § 1679b(a)(4) .......... 9

15 U.S.C. §1679b(b) .......... 10

15 U.S.C. § 1679c .......... 10

15 U.S.C. § 1679d ........................................................................................................ 10

Cal. Civ. Code § 1788.301(a) ........................................................................................ 11, 12, 14

Cal. Civ. Code § 1788.301(b)(1) ................................................................................ 8, 11, 12, 14

Cal. Civ. Code § 1789.12(d) ...................................................................................... 8, 10, 11, 14

Cal. Civ. Code § 1789.12(e)(5) ..................................................................................................... 10

Cal. Civ. Code § 1789.13(a) .......................................................................................................... 11

Cal. Civ. Code § 1789.13(g) .......................................................................................................... 11

Cal. Civ. Code § 1789.13(h) .......................................................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................................... 1, 5, 6, 16

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 4, 5, 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") corrects the original Complaint's threshold chronological defect but still fails to state any claim against Morning Law Group, P.C. ("MLG"). The original Complaint alleged Plaintiff's relationship with MLG began in October 2021—before MLG existed. The FAC now alleges Plaintiff enrolled with The Litigation Practice Group, P.C. ("LPG") in October 2021, LPG later transferred his account to Phoenix Law Group ("PLG"), PLG then transferred his account to MLG, and Plaintiff contracted with MLG on March 21, 2024. FAC ¶¶ 11–21. Each claim against MLG must therefore rest on MLG's own alleged conduct after the parties' relationship began in March 2024.

Each claim nonetheless fails on its own terms. The fraud and negligent misrepresentation claims do not identify who made the alleged statements, when or how they were made, or facts supporting falsity, the required state of mind, or justifiable reliance. The statutory claims recast legal representation—challenging disputed debts, defending collection actions, and pursuing claims against creditors—as credit repair or debt settlement, although the alleged services and the parties' March 21, 2024 agreement show otherwise. The legal malpractice claim alleges an unfavorable result, but no breach causing a less favorable outcome or resulting damages. The contract claim relies largely on promises the parties' agreement does not make and otherwise fails to allege breach of a contractual obligation; the implied covenant theory merely duplicates those allegations. The fiduciary duty claim likewise repackages alleged nonperformance without pleading a distinct breach or resulting harm. The UCL claim is derivative of those deficient theories. All nine counts should therefore be dismissed under Rules 12(b)(6) and 9(b).

## II. RELEVANT FACTS

### A. Procedural History

Plaintiff filed his original Complaint on June 24, 2026. Compl., Dkt. No. 1. The Complaint attributed all alleged conduct to a single "Defendant," including conduct dating back to October 2021. *See generally* Compl.; Compl. ¶ 7. MLG moved to dismiss because it was not incorporated until August 17, 2022, and the Complaint alleged no basis to attribute another

entity's earlier conduct to MLG. Def.'s Mot. to Dismiss or, in the Alternative, for More Definite Statement ("First MTD") 5–8, Dkt. No. 9. Plaintiff filed the FAC on September 18, 2026, revising the chronology to allege MLG became involved in March 2024. FAC ¶¶ 8–21.

**B. The FAC's New Allegations**

The FAC now alleges Plaintiff enrolled in LPG's debt resolution program in October 2021, LPG transferred or assigned his account to PLG in October 2022, and PLG later transferred or assigned it to MLG on an unspecified date. FAC ¶¶ 11–16.

In March 2024, an unidentified MLG "agent" allegedly represented MLG would challenge invalid or illegal debts on Plaintiff's credit report, defend Plaintiff against collection actions, and pursue claims against creditors or collection agencies on his behalf, thereby "increas[ing] and/or improv[ing] Plaintiff's credit score." FAC ¶¶ 18–19.

The FAC further alleges Plaintiff entered into a contract with MLG on March 21, 2024, and thereafter paid MLG $874.67 per month. FAC ¶¶ 21–23. It characterizes MLG's services as removing invalid or illegal debts from Plaintiff's credit report to improve his credit score. FAC ¶¶ 21, 45.

**C. The LPG Bankruptcy and the Purchaser LSA**

LPG was a California law firm that provided consumer debt resolution services to approximately 22,000 clients. *See* Delgado Decl. ¶ 3, Ex. A at 5:26. On March 20, 2023, LPG filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Central District of California. Delgado Decl. ¶ 4, Ex. B, Ex. 3 at 73. On July 22, 2023, the bankruptcy court found good cause to approve the sale of LPG's assets to MLG, determining that the sale was fair and reasonable, adequately marketed, negotiated and proposed in good faith, and an arm's-length transaction. Delgado Decl. ¶ 3, Ex. A at 1:26–2:6, 17:16–19. On August 2, 2023, the court entered the operative sale order approving the transfer of LPG's assets—including consumer client legal services agreements—to MLG free and clear of all liens, claims, encumbrances, and other interests, including successor liability claims. Delgado Decl. ¶ 4, Ex. B (the "Sale Order") at 7:3–7. The Sale Order further provided that MLG and its affiliates, successors, and assigns would

have no obligations for LPG's liabilities except as provided in the asset purchase agreement. Delgado Decl. ¶ 4, Ex. B at 13:7–10.

The Sale Order required transferred consumer contracts to be "reformed to comply with applicable nonbankruptcy law" and approved both a 90-day consumer notice and a form Purchaser Legal Services Agreement (the "Purchaser LSA"). Delgado Decl. ¶ 4, Ex. B at 14:8–10, 17:10–28 & Exs. 3, 4. The notice informed consumers that their "Original Agreement" was with LPG and allowed them to opt in, opt out, or take no action during the notice period. Delgado Decl. ¶ 4, Ex. B at 17:10–23 & Ex. 3.

The Purchaser LSA, which governed MLG's relationship with transferred clients, provides for representation concerning debts a client believes are invalid or legally unsupported and states that MLG provides legal services—not credit repair or debt settlement services. Delgado Decl. ¶ 4, Ex. B, Ex. 4 at 77, 79–80. On January 2, 2024, the bankruptcy court established February 23, 2024, as the general bar date for filing proofs of claim against LPG's estate and ordered that any person or entity that failed to file a timely proof of claim would be forever barred, estopped, and enjoined from asserting that claim against the estate. Delgado Decl. ¶ 5, Ex. C at 1:14–16, 4:5–6.

**D. Plaintiff's March 21, 2024 Legal Services Agreement**

The contract referenced in the FAC is the Legal Services Agreement between MLG and Plaintiff, which Plaintiff electronically signed on March 21, 2024. *See* Delgado Decl. ¶ 6, Ex. D (the "Agreement"); FAC ¶¶ 21 ("On March 21, 2024, having relied on Defendant's representations, Plaintiff formally enrolled various debts into Defendant's program by entering into a contract with Defendant for legal and debt resolution services . . . ."), 97 ("Plaintiff and Defendant entered into an attorney-client relationship on March 21, 2024, upon Plaintiff executing a Client Retainer Agreement with Defendant in which Defendant agreed to provide legal representation and debt resolution services to Plaintiff."), 104 ("The contract for legal and debt resolution services between Plaintiff and Defendant is a valid and enforceable contract."). Because the FAC expressly references and bases several claims on the Agreement, the Court may consider it under the incorporation-by-reference doctrine. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1)

the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); Def.'s Req. for Jud. Notice 2-3.

The Agreement limits MLG's representation to challenging debts Plaintiff believes are invalid, inaccurate, or legally unsupported; defending collection actions; and pursuing claims against creditors or collection agencies. Agreement at 1, 3–4. It excludes credit repair and debt settlement services, including negotiating discounts, reduced payments, or payment plans on valid debts except to resolve litigation. *Id.* at 4–5.

The Agreement further provides that Plaintiff's monthly payments are installments toward a flat legal fee, not funds escrowed or accumulated to pay creditors or settle debts. *Id.* at 5–6, 12. Plaintiff acknowledged that MLG had not instructed him to stop paying debts and that nonpayment could adversely affect his credit score. *Id.* at 2–3, 5, 8, 10. The Agreement requires best efforts, disclaims any guaranteed result, and includes integration and non-reliance provisions. *Id.* at 2, 5–6, 9. The payment schedule begins April 3, 2024, at $874.67 per month. *Id.* at 15.

## III. <u>ARGUMENT</u>

### A. Legal Standard

**Rule 12(b)(6).** Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only when the pleaded facts allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* Although the Court accepts well-pleaded facts as true, it need not accept legal conclusions, "[t]hreadbare recitals of the elements," or allegations that are merely conclusory. *Id.*; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). Nor may the Court assume that a plaintiff can prove facts not alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Dismissal is proper where the complaint lacks a

cognizable legal theory or pleads insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**Rule 9(b).** Claims sounding in fraud must also satisfy Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Ninth Circuit requires the plaintiff to plead "the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted), *superseded by statute on other grounds*; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The allegations must be specific enough to give the defendant notice of the particular misconduct alleged so it can defend against the charge rather than simply deny wrongdoing. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Moreover, Rule 9(b) applies not only to fraud claims, but also to other claims grounded in the same alleged fraudulent course of conduct. *Vess*, 317 F.3d at 1103–04.

### B. The Fraud and Negligent Misrepresentation Claims Fail Under Rules 9(b) and 12(b)(6) (Counts V and VI).

#### 1. *The FAC does not plead the alleged misrepresentations with particularity.*

Counts V and VI arise from the same alleged representations and course of conduct. The fraud claim alleges MLG represented that it would (1) resolve Plaintiff's debts "expeditiously," (2) improve his credit score, and (3) had resolved four debts when it had resolved none. FAC ¶ 83. It also alleges MLG "explicitly told Plaintiff to not make any payments to his creditors." FAC ¶ 85. The negligent misrepresentation claim relies on substantially the same statements, alleging MLG promised to communicate promptly with Plaintiff's creditors, resolve his debts efficiently, and improve his credit score despite knowing that missed payments would lower his credit score. FAC ¶¶ 91–92.

Because both claims rest on the same alleged fraudulent course of conduct, Rule 9(b) applies to each. *See Vess*, 317 F.3d at 1103–04. The FAC does not satisfy that standard. The statements allegedly made before enrollment trace to promises attributed only to an unidentified "Defendant's agent" in March 2024, before Plaintiff entered into the Agreement on March 21, 2024. FAC ¶¶ 18–21. The FAC does not identify the speaker, the speaker's role at MLG, a date

more specific than "March 2024," or facts showing the speaker acted on MLG's behalf. When the defendant is an entity, the plaintiff must identify the person who made the challenged statement on its behalf. *See Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 713 (E.D. Cal. 2019). The generic reference to "Defendant's agent" therefore cannot support either claim.

The alleged representation that MLG had resolved four debts is likewise insufficient. The FAC alleges only that MLG made the statement "at one point." FAC ¶¶ 35, 83. It identifies no speaker, date, medium, surrounding circumstances, or facts showing the speaker acted for MLG. The allegation omits the time, place, specific content, and "identities of the parties to the [alleged] misrepresentation" required by Rule 9(b). *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988). It therefore cannot support Counts V or VI.

2. *The FAC does not plausibly plead falsity, the required state of mind, or justifiable reliance.*

The FAC also fails to plead falsity, the required state of mind, or justifiable reliance. *First*, it alleges no facts showing that any challenged representation was false when made. Although the FAC asserts MLG "had actual knowledge that its program would destroy Plaintiff's credit" because MLG instructed him to stop paying creditors, it identifies no speaker, communication, document, or other factual basis showing MLG gave that instruction or made a false statement about its services or Plaintiff's credit. FAC ¶ 49; *see also* FAC ¶¶ 84, 92. *Second*, the FAC does not plead the state of mind required for either claim. Fraud requires knowledge of falsity or reckless disregard for the truth; negligent misrepresentation requires a lack of reasonable grounds to believe the representation was true. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173–74 (2003); FAC ¶¶ 82, 90. The conclusory assertion of "actual knowledge" does not satisfy either standard. Although knowledge may be alleged "generally," supporting facts must still make the claim plausible, and the underlying fraud must be pleaded with particularity. *Iqbal*, 556 U.S. at 663, 686–87; *see Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (affirming dismissal where the complaint alleged "no specific facts demonstrating [the defendant's] wrongdoing"). *Third*, although the FAC alleges Plaintiff relied "by enrolling in Defendant's debt resolution/credit improvement program and making payments,"

it alleges no facts showing that reliance was justified. FAC ¶ 86. The additional allegation that Plaintiff "heavily relied" on the representations "to his detriment" is likewise conclusory. FAC ¶ 93; *see Iqbal*, 556 U.S. at 678. Because both claims require a false representation and justifiable reliance, these deficiencies independently defeat Counts V and VI. *See Small*, 30 Cal. 4th at 174, 179; *Lazar*, 12 Cal. 4th at 638.

The Agreement reinforces these deficiencies as to falsity and justifiable reliance. As explained above, the Court may consider it under the incorporation by reference doctrine. *See supra* Section II.D. Although the Agreement does not establish whether any separate oral statement was made, its terms define the services MLG agreed to provide and bear on whether Plaintiff could justifiably rely on alleged inconsistent promises.

The Agreement contradicts the alleged promises on which Counts V and VI depend. It does not promise that MLG would resolve Plaintiff's debts "expeditiously" or improve his credit. Instead, it requires only MLG's best efforts, disclaims any guaranteed service or outcome, and states that Plaintiff did not rely on representations omitted from the Agreement. *Compare* Agreement at 2 ("**MLG will use its best efforts to represent You as specified in this Agreement.**"), 5 ("**MLG does not guarantee any services nor any outcome in Your (or any) legal matter.**"), 9 ("You have read and understand this Agreement and are entering into it after full investigation and are not relying upon any statement or representation from MLG or any of its employees or agents, that is not written in this Agreement."), *with* FAC ¶¶ 18–20, 83. The Agreement also states that MLG did not instruct Plaintiff to stop paying debts and warns that nonpayment would adversely affect his credit score. *Compare* Agreement at 3 ("You understand that Your failure to pay debts as they become due will adversely affect Your credit score."), 5 (same), 10 ("By signing this Agreement, You acknowledge that MLG has not instructed You to breach any contract, fail to make any required payment, or fail to perform any obligation that You have lawfully incurred; in particular, you acknowledge that MLG has not instructed you to stop payment on any debts."), *with* FAC ¶¶ 26, 49, 84–85. MLG does not ask the Court to decide whether the alleged oral statements were made. But the Court need not accept allegations contradicted by documents properly before it. *See Sprewell v. Golden State Warriors*, 266 F.3d

979, 990 (9th Cir.) (noting court is "'not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint'") (citation omitted), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). These terms render implausible both that MLG knowingly or negligently misrepresented its services and that Plaintiff justifiably relied on promises inconsistent with the Agreement. Counts V and VI should therefore be dismissed.

**C. The Statutory Claims Fail Because MLG Provided Legal Services, Not Credit Repair or Debt Settlement (Counts I–III).**

Counts I through III rest on the same premise: that MLG's legal representation constituted a credit repair or debt settlement program. As explained in Section II.D, the Court may consider the Agreement under the incorporation by reference doctrine. The Court may also take judicial notice of the bankruptcy court's order approving the Purchaser LSA and the form of agreement authorized for transferred clients. *See* Delgado Decl. ¶ 4, Ex. B at 17:24–28 & Ex. 4; Def.'s Req. for Jud. Notice 2. MLG relies on these documents only to provide context for the alleged services and to assess whether the FAC plausibly characterizes them as credit repair or debt settlement—not to establish MLG's statutory status by contractual disclaimer or to resolve disputed facts.

The FAC alleges MLG offered to challenge invalid or illegal debts on Plaintiff's credit report, defend collection actions, and pursue claims against creditors or collection agencies. FAC ¶¶ 18, 25. These are legal functions: contesting a debt's validity, defending litigation, and asserting affirmative claims. *See, e.g., Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*, 17 Cal. 4th 119, 128 (1998) (the practice of law includes representing clients in judicial proceedings, providing legal advice, and preparing legal instruments), *superseded by statute on other grounds*. They differ from services offered to repair credit or settle a valid debt for less than the amount owed. *See* 15 U.S.C. § 1679a(3)(A); Cal. Civ. Code §§ 1789.12(d), 1788.301(b)(1). Any incidental credit improvement from successful representation does not itself bring the services within these statutes. As discussed below, the alleged services satisfy none of their definitions. *See infra* Sections III.C.1–3.

Nor do the FAC's labels alter the nature of the services alleged. FAC ¶¶ 21, 29–30, 45, 47; *see Iqbal*, 556 U.S. at 678 ("labels and conclusions" are insufficient) (citation omitted). The

relevant agreements confirm that characterization. Plaintiff's Agreement describes materially the same legal services, exclusions, and fee structure as the Purchaser LSA approved for transferred clients. *Compare* Agreement at 1, 3–6, 12, *with* Delgado Decl. ¶ 4, Ex. B, Ex. 4 at 77, 79–80. The bankruptcy court did not decide whether MLG was subject to any statute asserted here. Its approval is relevant only because the approved form and Plaintiff's materially consistent Agreement describe a legal services relationship. Against that common background, each statutory claim fails for an additional, statute-specific reason.

1. *The CROA claim fails because the FAC does not plead credit repair services (Count I).*

The Credit Repair Organizations Act ("CROA") defines a "credit repair organization" as a person who provides services "for the express or implied purpose" of improving a consumer's credit record, history, or rating, or provides related advice or assistance. 15 U.S.C. § 1679a(3)(A). The FAC alleges Plaintiff paid MLG $874.67 per month from March 2024 through March 2026 to challenge and remove disputed debts and thereby improve his credit history and scores. FAC ¶ 46. It further alleges MLG's "legal and debt resolution services" at least "impl[ied]" a purpose of improving consumers' credit. FAC ¶ 47. But those allegations merely characterize the anticipated result of the legal services described above. That a successful debt challenge may incidentally improve a credit score does not plausibly allege that MLG offered its legal services "for the express or implied purpose" of improving Plaintiff's credit. 15 U.S.C. § 1679a(3)(A).

Because the FAC does not plausibly allege that MLG was a credit repair organization, its remaining CROA theories fail. Paragraph 49 alleges MLG violated section 1679b(a)(3) and (4) by representing its program could improve Plaintiff's credit, instructing him to stop paying creditors, failing to challenge and remove disputed debts, and overstating the speed and efficacy of its services. FAC ¶ 49. As explained in Section III.B, those representations are not pleaded with particularity, and the FAC alleges no facts showing MLG's description of its services was false or misleading. Alleged failure to perform promised legal services may support a breach theory; it does not transform those services into credit repair subject to the CROA. *See, e.g.*, *Enriquez v.*

*Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1063 (D. Haw. 2011) (dismissing CROA claim where plaintiff did not allege credit repair interactions with defendants).

The advance fee theory under section 1679b(b) fails for the same reason. The FAC alleges MLG collected $874.67 per month after sending an initial representation letter but before fully performing its contractual duties. FAC ¶¶ 50–52. The Agreement, however, characterizes those payments as installments toward a "flat fee" for ongoing "legal services"—not advance payment for a discrete credit repair service that had to be completed before compensation. Agreement at 5–6, 12, 15. Alleged inadequate performance of legal services does not establish a prohibited advance charge under the CROA.

The FAC likewise alleges derivative violations of sections 1679c and 1679d based on MLG's failure to provide CROA disclosures and include CROA cancellation language in the Agreement. FAC ¶¶ 53–56. But those requirements apply only to a credit repair organization, which the FAC does not plausibly allege. MLG does not contend that the Agreement waived any CROA right. Rather, the services alleged in the FAC, as reflected in the Agreement, fall outside the CROA's scope. Count I should therefore be dismissed.

2. *The CCSOA claim fails under the attorney exemption and because the FAC alleges no nonlegal credit services (Count II).*

The California Credit Services Organizations Act ("CCSOA") defines a "credit services organization" as one that provides or represents that it can provide services to improve a consumer's credit record, history, or rating, obtain credit, or provide related advice or assistance. Cal. Civ. Code § 1789.12(d). It expressly excludes "[a]ny attorney licensed to practice law in this state, where the attorney renders services within the course and scope of the practice of law," including "attorneys that regularly engage in litigation in furtherance of assisting consumers with credit issues." *Id.* § 1789.12(e)(5). That exemption applies here. MLG is a California professional law corporation, and the alleged services fall within the practice of law. Delgado Decl. ¶ 7, Ex. E ("The purpose of the corporation is to engage in the profession of LAW and any other lawful activities (other than the banking or trust company business) not prohibited to a corporation engaging in such profession by applicable laws and regulations."); *see also* FAC ¶ 6

("Defendant MORNING LAW GROUP, P.C. is a California law firm that specializes in consumer debt settlement."). The FAC alleges no nonlegal credit service. Consistent with those allegations, the Agreement identifies MLG as a licensed California law corporation, provides for representation in disputes concerning enrolled debts, and invokes attorney-client confidentiality. Agreement at 2, 8–9. Indeed, the FAC itself alleges the Agreement created an attorney-client relationship. FAC ¶ 97 (alleging "Plaintiff and Defendant entered into an attorney-client relationship on March 21, 2024").

The FAC's prohibited conduct theories do not avoid that exemption. Its section 1789.13(a) theory alleges MLG received payment before fully performing its promised services. FAC ¶¶ 61–63. But the monthly payments were installments toward a flat legal fee for continuing representation, not advance payment for credit services governed by the CCSOA. Agreement at 5–6, 12, 15. Alleged nonperformance does not change the character of those fees or services.

The theories under sections 1789.13(g) and (h) fare no better. Paragraph 65 repeats the representations addressed in Sections III.B and III.C.1. FAC ¶ 65. Those allegations are not pleaded with particularity and do not plausibly show an untrue or misleading representation, fraud, or deception in the offer of credit services. The remaining assertions—that MLG created a false impression it was properly handling Plaintiff's finances and credit and systematically engaged in unfair or deceptive practices to maximize profits—are "'merely conclusory'" and need not be accepted as true. FAC ¶¶ 66–67; *Khoja*, 899 F.3d at 1008 (citation omitted). Because the FAC alleges services within the attorney exemption and no distinct nonlegal credit service or prohibited conduct, Count II should be dismissed.

3. *The CFDSPA claim fails because the FAC does not plead debt settlement services (Count III).*

The California Fair Debt Settlement Practices Act ("CFDSPA"), by contrast, regulates a different service: negotiating or offering to negotiate with creditors "if the primary purpose of that advice or action is to obtain a settlement for less than the full amount of the debt." Cal. Civ. Code §§ 1788.301(a), (b)(1). The FAC does not allege MLG offered to negotiate reductions of valid debts. *See generally* FAC ¶¶ 18–31, 72–75. It alleges MLG would challenge whether debts were

legally owed, defend collection actions, and pursue affirmative claims. FAC ¶¶ 18, 25. Those legal services are distinct from negotiating a discount on an admitted debt.

The allegation that MLG once claimed to have "settled" four debts does not show that its contracted service involved negotiating debt reductions. FAC ¶ 35. Nor do the alleged deceptive acts, communication failures, or credit-related statements establish that MLG was a debt settlement provider. FAC ¶¶ 72, 74. The Agreement confirms the distinction: it excludes negotiating discounts, reduced payments, or payment plans on valid debts and states that Plaintiff's fees would not accumulate toward a settlement. Agreement at 4–6, 12. Although the Agreement permits MLG to settle a collection action, resolving litigation for a client is a legal service—not the debt settlement business regulated by the CFDSPA. *See* Cal. Civ. Code § 1788.301(b)(1); *see also supra* Section III.C (citing *Birbrower*, 17 Cal. 4th at 128). Otherwise, every attorney who settled a collection action would become a statutory debt settlement provider. Count III should therefore be dismissed.

### D. The Legal Malpractice Claim Fails for Lack of Breach, Causation, and Damages (Count VII).

To state a legal malpractice claim, Plaintiff must plead duty, breach, causation, and damages. *Parlante v. Cazares*, 2012 WL 525690, at *4 (E.D. Cal. Feb. 16, 2012). The FAC alleges MLG failed to communicate promptly with Plaintiff's creditors, failed to resolve his debts, and falsely represented that some debts had been resolved. FAC ¶ 100. But it identifies no specific communication MLG failed to make, debt competent counsel would have resolved, or collection action MLG should have avoided or won. It therefore alleges neither a breach of the standard of care nor facts showing that, "'but for the alleged malpractice,'" Plaintiff likely "'would have obtained a more favorable result.'" *Parlante*, 2012 WL 525690, at *4 (quoting *Jocer Enters., Inc. v. Price*, 107 Cal. Rptr. 3d 539, 550 (Cal. Ct. App. 2010)). The FAC thus alleges an "unfavorable outcome," not actionable negligence that caused a less favorable outcome. *Viner v. Sweet*, 30 Cal. 4th 1232, 1241 (2003) (in legal malpractice action, plaintiff must show "*the loss suffered was in fact caused by the alleged attorney malpractice*").

Nor does the FAC plead damages attributable to any alleged breach. It lists financial losses, increased debt, emotional distress, a decreased credit score, credit denials, and lost payments, but does not connect any injury to a specific act or omission by MLG. FAC ¶¶ 39, 102. Although Plaintiff alleges he made monthly payments during his relationship with MLG, he does not distinguish fees paid for legal services from losses caused by deficient representation or explain how competent representation would have avoided the other alleged injuries. FAC ¶¶ 23–24, 37, 39. The Agreement's best efforts and no guarantee provisions reinforce that an unfavorable result, without a pleaded breach and causal connection, does not establish malpractice damages. Agreement at 2, 5. Because the FAC does not plausibly plead breach, causation, or resulting damages, Count VII should be dismissed.

### E. The Breach of Contract Claim Does Not Plead Breach of an Obligation Imposed by the Agreement (Count VIII).

To state a breach of contract claim, Plaintiff must plead a contract, performance or excuse, breach, and resulting damages. *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F. Supp. 3d 727, 735 (E.D. Cal. 2020). The complaint must, at minimum, identify the contractual provision allegedly breached. *Id.* (quoting *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012)). The FAC instead lists six purported breaches without identifying the provisions that impose those obligations. FAC ¶ 106.

Several theories are foreclosed by the Agreement. As explained above, the Agreement excludes credit repair services, disclaims any guarantee that a debt will be invalidated or settled, and does not promise to remove debts from Plaintiff's credit report or improve his credit score. *See supra* Sections II.D, III.B–C; Agreement at 4–5, 9. The alleged representation that MLG's program could improve Plaintiff's credit is not a contractual term, and the integration clause excludes statements made before the contract that were omitted from the Agreement. Agreement at 9. Nor did collecting the agreed monthly payments breach the Agreement: each payment was an earned installment toward a flat legal fee, not compensation conditioned on a particular task or outcome. *Id.* at 5–6, 12, 15. Count VIII thus cannot rest on MLG's alleged failure to remove

debts, improve Plaintiff's credit, guarantee a successful resolution, or complete particular services before earning its fees.

The remaining theories are conclusory. The Agreement requires MLG to use "best efforts," assist Plaintiff in communicating with creditors, and challenge debts when appropriate based on the information provided. Agreement at 1–3. Yet the FAC identifies no debt MLG should have challenged, facts making a challenge appropriate, creditor communication MLG failed to assist with, or conduct showing a failure to use best efforts. FAC ¶ 106. And although the FAC alleges MLG failed to communicate "promptly," the Agreement imposes no such requirement. *Id.* The FAC therefore does not plausibly allege breach of an obligation imposed by the Agreement.

The implied covenant theory adds nothing. Paragraphs 107 and 108 merely incorporate MLG's alleged "comprehensive conduct" without identifying separate conduct that frustrated Plaintiff's contractual rights. FAC ¶¶ 107–08. The implied covenant cannot duplicate the express breach of contract claim or impose duties inconsistent with the Agreement, including a guaranteed result. *Cf. Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (an implied covenant claim is superfluous when it relies on the same acts and seeks the same relief as the contract claim). Count VIII should therefore be dismissed.

**F. The UCL Claim Fails Because It Is Derivative and Pleads No Independent Unfair or Fraudulent Conduct by MLG (Count IV).**

The UCL claim rests on the statutory violations, misrepresentations, and nonperformance addressed above. Because the FAC does not plausibly plead unlawful, unfair, or fraudulent conduct by MLG, Count IV fails. *See supra* Sections III.B–C.

*First*, the unlawful prong theory is derivative of the FAC's other claims. Count IV incorporates the same alleged violations of the CROA, CCSOA, and CFDSPA and identifies no separate unlawful conduct by MLG. FAC ¶¶ 76–79. "Where the UCL claim is premised on the same acts alleged in the complaint's other causes of action, and those causes of action fail, the UCL claim likewise must be dismissed because the plaintiff has not adequately alleged any predicate unlawful acts." *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1010–11 (N.D. Cal. 2016).

Because the predicate statutory theories fail for the reasons explained above, the derivative unlawful prong theory fails as well.

*Second*, the FAC does not plausibly plead a standalone unfair or fraudulent prong claim. Its unfairness theory relies on the same alleged misrepresentations and failures to provide credit repair or debt settlement services addressed above. FAC ¶¶ 78–79. A business practice is unfair only if it is "contrary to established public policy" or "immoral, unethical, oppressive or unscrupulous" and its harm to consumers outweighs its benefits. *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 960 (N.D. Cal. 2016). The FAC identifies no established public policy, facts permitting that balancing, or unfair practice distinct from its deficient statutory and misrepresentation theories. Its fraudulent prong theory likewise rests on the representations underlying Counts V and VI, which are not pleaded with particularity. FAC ¶¶ 77–79; *see supra* Section III.B. Conclusory labels do not cure those defects. *See BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 802 (C.D. Cal. 2021) (dismissing UCL unfair prong claim based on conclusory labels and insufficient facts showing the defendant made the challenged statements or engaged in unfair conduct). Count IV should therefore be dismissed.

**G. The Breach of Fiduciary Duty Claim Pleads No Distinct Breach or Resulting Harm (Count IX).**

To state a breach of fiduciary duty claim, Plaintiff must plead a fiduciary duty, breach, and resulting damage. *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1095 (N.D. Cal. 2017). The FAC alleges MLG owed fiduciary duties based on the parties' "relationship" and Plaintiff's "special confidence" in MLG. FAC ¶¶ 111–12. But the alleged breaches—failing to challenge or remove disputed debts, provide legal and debt resolution services to the best of its ability, communicate with creditors, and improve Plaintiff's credit—concern only the adequacy and outcome of MLG's services. FAC ¶ 114. They duplicate Plaintiff's malpractice and contract theories and identify no distinct breach of loyalty, confidentiality, disclosure, or another fiduciary obligation.

The FAC's remaining allegations fare no better. It alleges Plaintiff entrusted MLG with money "to use . . . in a responsible manner to settle his debts" and that MLG favored its own

financial interests by charging for services it did not perform. FAC ¶¶ 113–14. But the Agreement characterizes Plaintiff's monthly payments as installments toward a flat legal fee—not funds escrowed or accumulated to pay creditors or fund settlements—and excludes debt settlement services except as necessary to resolve litigation. Agreement at 4–6, 12, 15. The FAC therefore does not plausibly allege that MLG received funds entrusted for debt settlements. *See Sprewell*, 266 F.3d at 990 (courts need not accept allegations contradicted by documents referenced in the complaint). Nor does its conclusory assertion that MLG favored its financial interests identify a conflict, undisclosed benefit, diversion of client property, or other disloyal conduct distinct from the alleged failure to perform services for which Plaintiff paid.

The FAC also fails to plead damage proximately caused by a fiduciary breach. *See Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015). Paragraph 115 alleges only that Plaintiff suffered the damages "set forth above," without identifying any loss caused by misuse of entrusted funds, divided loyalty, or other fiduciary misconduct distinct from the alleged deficient representation or contractual nonperformance. Because the FAC pleads neither a distinct fiduciary breach nor resulting harm, Count IX should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, MLG respectfully requests that the Court dismiss the FAC in its entirety under Rule 12(b)(6) and dismiss the claims sounding in fraud under Rule 9(b).

Dated: October 2, 2026

DTO LAW

By: */s/ William A. Delgado*
William A. Delgado

Attorneys for Defendant
MORNING LAW GROUP, P.C.